UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EBONY C., | ) | |
| | ) | |
| Plaintiff, | ) | No. 24-cv-5150 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ebony C.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB"). For the reasons set forth below, Plaintiff's motion for summary judgment [Dkt. 12][2] is denied, and the Commissioner's motion for summary judgment [Dkt. 13] is granted. The decision of the Commissioner is affirmed.

## I.  Procedural History

The plaintiff applied for DIB in October 2021, based on stroke and chronic heart failure, and alleged disability onset in the same month. [R. 537.] Her claims were denied at the initial and reconsideration levels. [R. 542, 551.] Following an Administrative Hearing, on June 2, 2023, the Administrative Law Judge ("ALJ") determined Plaintiff was not disabled. [R. 502.] The Appeals Council denied review, rendering the ALJ's decision the Commissioner's final decision, which Plaintiff now appeals.

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]   Plaintiff's "Brief in Support of Reversing the Decision of the Commissioner" [Dkt. 12] is construed as a motion for summary judgment.

## II.        The ALJ's Decision

At issue is ALJ Edward Studzinski's June 2, 2023  opinion denying Plaintiff disability benefits, which followed the five-step analysis for disability determinations. At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged disability onset date of October 8, 2021, through her date last insured of December 31, 2022. [R. 496.] At Step Two, the ALJ found that Plaintiff had severe impairments of cardiomyopathy, stroke, and obesity. [*Id.*] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App'x 1. [R. 497.]

Before Step Four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work with no limitations in her total ability to sit in an eight-hour workday but with other limitations including, as is relevant here, standing or walking for up to two hours in a workday, and no complex instructions or decision-making. [R. 498.] At Step Four, the ALJ noted that Plaintiff was incapable of performing any of her past relevant work. [R. 502.] At Step Five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could have performed, including Charge Accountant Clerk, Information Clerk, and Circuit Board Tester. [R. 503.] The ALJ therefore found that Plaintiff was not disabled. [R. 503-04.]

## III.      Social Security Regulations and Standard of Review

Under the Social Security Act (the "Act"), a person is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled, an ALJ applies a sequential five-step test. *See* 20 C.F.R. § 404.1520(a); *Langley v. O'Malley*, No. 22-cv-3008, 2024 WL 3649021, at *2 (7th Cir. Aug. 5, 2024) (citation omitted). The Act requires all applicants to prove they are disabled as of their

date last insured to be eligible for DIB. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The Court's scope of review is limited to deciding whether the Commissioner's final decision is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). If there is substantial evidence in support of the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). This "lax" standard is satisfied when the ALJ "minimally articulates his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (cleaned up). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Yet an ALJ "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (internal signals and citations omitted). Additionally, "[w]hen reviewing a disability decision for substantial evidence, [the Court] will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052-53.

IV.     **Discussion**

Plaintiff argues that the ALJ: (1) failed to account for all of Plaintiff's limitations in the RFC

finding; (2) erred in rejecting the medical opinion of Plaintiff's treating cardiologist; and (3) insufficiently evaluated Plaintiff's symptoms. The Court addresses Plaintiff's arguments in turn.

### a. The ALJ Sufficiently Justified His RFC Findings

Plaintiff makes a multi-pronged attack on the ALJ's RFC determination. First, relying upon *Perkins v. Astrue*, 498 F. App'x 641, 643 (7th Cir. 2013), Plaintiff asserts that ALJ's assessment of her heart failure was insufficient because the ALJ did not expressly consider that Plaintiff's heart failure was denoted as Class II under the New York Heart Association's classification system. [Dkt. 12 at 5-6.] The Court finds this argument overstates the *Perkins* court's holding, which was that the ALJ erred in disregarding an entire line of contrary evidence about the claimant's Class III heart failure and symptoms; *Perkins* did not hold that consideration of heart failure classification is obligatory. Since *Perkins*, courts have rejected similar arguments that *Perkins* requires ALJs to mention heart failure classifications. *Marshall v. Kijakazi*, No. 21-cv-98-jdp, 2022 WL 2914492, at *6 (W.D. Wis. July 25, 2022) (rejecting claimant's argument "that a failure to discuss a congestive heart failure diagnosis requires reversal"); *Keith P. v. Kijakazi*, No. 2:21-cv-02004-CSB-EIL, 2021 WL 6931804, at *7 (C.D. Ill. Dec. 5, 2021) (finding ALJ did not err where "the only piece of evidence the Plaintiff alleges the ALJ did not consider" was "the Class III [heart failure] classification"); *see also Warnell*, 97 F.4th at 1053 (noting that ALJs need not discuss "every piece . . . of evidence").

Here, although the ALJ did not specifically mention that Plaintiff's heart failure was denoted as Class II, the ALJ acknowledged Plaintiff's heart failure diagnosis and summarized Plaintiff's testimony and medical records pertaining to Plaintiff's cardiomyopathy, devoting a substantial portion of the remaining opinion to discussing the combination of recorded symptoms resulting from heart failure, stroke, morbid obesity, and obstructive sleep apnea. [R. 497-502.] The ALJ acknowledged that Plaintiff's medical records disclosed symptoms including edema, shortness of breath climbing stairs and walking, and that Plaintiff testified to symptoms such as drowsiness, frequent urination, and

difficulty with mobility. That said, the ALJ concluded that the combination of symptoms did not create a Listing-level impairment. [R. 497.] The Court discerns no issue with the ALJ's general recitation of evidence, and Plaintiff next raises complaints as to specific components of her claimed symptoms.

Second, Plaintiff next faults the ALJ for his "illogical" rejection of her claimed need to elevate her legs. [Dkt. 12 at 6-7.] But the ALJ did acknowledge Plaintiff's cardiologist's opinion, expressed in an RFC questionnaire, that Plaintiff would need to elevate her legs "as needed"; the ALJ rejected that opinion as unsupported by any other medical record indicating Plaintiff's need to raise her legs. [R. 501.] The ALJ further noted that Plaintiff exhibited no edema in her consultative examination. [R. 500.] The opinion reflects the ALJ's consideration of Plaintiff's symptoms in light of the conflicting evidence in the record. Specifically, the ALJ cited Plaintiff's multiple emergency room visits, which indicated Plaintiff's symptoms were sporadic, and noted that her testimony was inconsistent with treatment notes from her physicians. [R. 499.] For instance, Plaintiff testified that she had an increase in shortness of breath and chest pain in July 2022, but the ALJ noted that this was not in line with treatment notes from her cardiologist. [R. 500.] The Court can adequately trace the ALJ's line of reasoning to his conclusion rejecting Plaintiff's claimed need to elevate her legs.

Third, Plaintiff contends the ALJ failed to support his finding that Plaintiff's claimed medication side effect of fatigue would not prevent her from performing simple tasks. [Dkt. 12 at 7-9.] The ALJ found Plaintiff's testimony regarding her fatigue was inconsistent with the medical record. In fact, the ALJ noted that Plaintiff did not complain of excessive daytime sleepiness, denied symptoms at multiple appointments, and, although attributed fatigue to her medications in November of 2021, she reported no medication side effects in December of 2023. [R. 497, 499, 500, 501.] Despite finding almost no support for the severity of Plaintiff's claimed fatigue, the ALJ did account for side effects of Plaintiff's medication in Plaintiff's RFC. [R. 498.] The Court can sufficiently trace the path of the ALJ's reasoning from the evidence to his conclusion. The Court finds the ALJ more than "minimally

articulated" the reasoning behind this decision, and Plaintiff points to no evidence indicating she is unable to perform as the ALJ specified in the RFC.

Fourth, Plaintiff argues that although the ALJ acknowledged another claimed medication side effect of needing frequent bathroom breaks, he did not address the evidence supporting his conclusion that it warranted no functional restrictions. But the ALJ questioned during the Administrative Hearing whether there were records documenting Plaintiff's alleged frequent urination, and Plaintiff's counsel stated that he did not see that documented in the record. [R. 528.] Further, as noted above, Plaintiff denied suffering side effects from her medication in December of 2023, after her Administrative Hearing testimony. [R. 500.] Although the Court does not base its decision upon this ground, the foregoing is consistent with the Commissioner's point that Plaintiff reported no urinary issues during multiple treatment sessions with her medical providers. [Dkt. 14 at 7 (citing R. 32, 83, 98, 456, 854, 859-60, 873, 1400, 1432, 1455, 1596, 1608, 1622).] The ALJ's reasoning is supported by substantial evidence.

Finally, Plaintiff asserts that the ALJ neglected to fully consider her obesity as a compounding condition that could change her RFC. However, the ALJ discussed Plaintiff's obesity on multiple occasions [R. 497-98, 515]; limited Plaintiff to sedentary work; and expressly determined Plaintiff should be "limited to occasional postural activities, as greater activity could exacerbate her impairments, especially when considering obesity" [R. 501]. This shows the ALJ did consider Plaintiff's obesity in crafting the RFC, and his decision is supported by substantial evidence in this regard. The ALJ here "sufficiently canvassed the record[,]" and the record does not "compel[] a contrary result." *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023). The Court accordingly will not remand the case on these arguments.

### b. The ALJ Did Not Err in Rejecting the Medical Opinion of the Treating Cardiologist

Plaintiff next asserts the ALJ erred, under 20 C.F.R. § 404.1520c, in evaluating and rejecting

the medical opinion of Plaintiff's treating cardiologist, Dr. Karolina K. Marinescu. [Dkt. 12 at 10-14.] Under § 404.1520c, the most important factors in evaluating a medical opinion are supportability of medical opinion and consistency with other medical sources. 20 C.F.R. § 1520c(b)(2). The ALJ found Dr. Marinescu's assessment to be inconsistent with other identified medical sources and found that the opinions in the assessment lacked support because they were not based on objective findings. [R. 501.] Accordingly, the ALJ addressed the most important factors, as directed in § 1520c(b)(2). In addition, the ALJ had already noted Plaintiff's denial of side effects from her medication and lack of edema at her consultative examination, and, in finding Dr. Marinescu's opinion unpersuasive, further emphasized that Dr. Marinescu had only seen Plaintiff once, and (outside of her RFC questionnaire response) no medical treatment record indicated Plaintiff needed to elevate her legs.] On this record, the ALJ reasonably concluded that the opinion lacked sufficient supportability; Plaintiff seeks an improper reweighing of the evidence. *See Warnell*, 97 F.4th at 1053. While the ALJ's analysis could have been more fulsome, and reasonable minds perhaps could differ, the ALJ provided substantial evidence for this conclusion.

### c. The ALJ's Evaluation of Plaintiff's Symptoms Was Legally Sufficient

Lastly, Plaintiff contends that the ALJ's evaluation of Plaintiff's symptoms was legally insufficient under Social Security Ruling ("SSR") 16-3p, which requires adjudicators to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In particular, Plaintiff faults the ALJ for failing to resolve purported inconsistencies regarding her ability to climb stairs, and for considering her symptoms outside the rigid context of the workplace. [Dkt. 12 at 14-15.] "When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, [her] level of pain or

symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8.

The ALJ here detailed the evidence regarding Plaintiff's ability to walk and climb stairs, noting Plaintiff testified at the April 2023 Administrative Hearing that it takes her five minutes to climb three stairs; the ALJ further observed, however, that Plaintiff had reported in April 2022 and December 2023 that she experienced shortness of breath after climbing one flight of stairs and reported no shortness of breath in March of 2023. [R. 499, 500.] The ALJ ultimately deemed Plaintiff's testimony that it takes her five minutes to climb three stairs an "exaggeration" [R. 500]; the Court cannot deem that determination "patently wrong" on this record, *see Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014), and accordingly affirms the ALJ's decision on this ground.

### V.     Conclusion

For all the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence and adequately links the evidence to the ALJ's conclusions. The Court declines to remand this matter. The Commissioner's final decision to deny benefits is affirmed.

Dated: August 26, 2025

Keri L. Holleb Hotaling
United States Magistrate Judge

8